Argued June 4, reversed July 22, argued on rehearing September 9, modified on rehearing October 14, 1924.

# D. H. SPHIER v. JOHN MICHAEL, PETER MICHAEL AND J. F. ARNOLD.

### (227 Pac. 1062; 229 Pac. 1100.)

**Principal and Agent—Generally, Agency Terminable at Any Time in Absence of Agreement as to Its Duration.**

1. Generally, principal may revoke authority of agent at any time whenever there is no agreement as to its duration.

**Principal and Agent—Authority Given for Valuable Consideration not Revocable by Principal Alone, Unless so Stipulated.**

2. Where authority or power is given for valuable consideration, it may not be revoked by act of principal alone, in absence of stipulation that it shall be revocable, and this is true, although authority is not expressed to be irrevocable.

**Principal and Agent—Agency for Management of Real Estate Conferred as Part Consideration for Transfer of Legal Title Held not Revocable by Principal.**

3. Where plaintiff transferred legal title to real estate to defendant retaining equitable ownership of undivided half interest, legal title to which was to be reconveyed on payment out of income of encumbrances on land, and part of consideration for transfer was appointment of plaintiff as agent for management of property, *held*, that revocation of agency by defendant pending reconveyance contemplated was unauthorized.

**Principal and Agent—Remedy for Unauthorized Revocation of Agency Contract Stated.**

4. The remedy for an unauthorized revocation by principal of agency contract is by action for damages for breach of contract and not injunction to compel performance.

## ON REHEARING.

**Principal and Agent—Agency Held Coupled With Interest—Agent Held Entitled to Sue in Equity for Principal's Revocation of "Agency Coupled With an Interest."**

5. Where plaintiff, in part consideration for conveyance of property by him to defendant, which was to be reconveyed upon payment out of encumbrances on land, was made defendant's agent in management of property, plaintiff being owner of interest in subject matter of agency, "such agency was coupled with an interest," entitling him to sue in equity for defendant's unauthorized revocation of agency.

**Principal and Agent—Interest in Subject Matter Necessary to Constitute "Power Coupled With an Interest."**

6. To constitute "power coupled with an interest," there must be an interest in subject matter itself, and not mere interest in result of execution of agent's authority, and both agency and interest must be derived from same source.

See 2 C. J., pp. 534, 535.

From Deschutes:  T. E. J. DUFFY, Judge.

Department 2.

From a decree for an accounting for rents collected, granting to plaintiff the management of the real property involved herein, for payment of money, and for injunctive relief, defendants appeal to this court, assigning numerous errors.          REVERSED.

For appellants there was a brief over the names of *Mr. R. S. Hamilton* and *Messrs. Revelle & Revelle,* with an oral argument by *Mr. Hamilton.*

For respondent there was a brief and oral argument by *Mr. Jay H. Upton.*

BROWN, J.—This suit arises from an attempt to revoke an agency contract. D. H. Sphier, plaintiff herein, is an aged Armenian, a fellow countryman and a fellow church member of defendant John Michael, and, previous to the time the suit was brought, his intimate friend. Neither can read or write the English language, but Michael is a merchant, a banker for his countrymen, and has accumulated much wealth. The whole of plaintiff's property is represented by the structure that bears his name and the lot on which it stands.

Michael testified that he entered into the contract with Sphier which forms the basis of this suit largely as a matter of sympathy; but the evidence discloses that when he was offered the return of all the money which he had put into the property, together with interest thereon, and his expenses, he refused to accept the same, claiming, in effect, as he had a right to claim, that the Bend property represented an investment and was not a donation to charity.

The agency contract involved in this litigation constituted the plaintiff's means of livelihood, and was based upon a valuable consideration paid by Sphier to Michael. For value, a part of which was the agency contract, plaintiff transferred to Michael the legal title to the Sphier block in the City of Bend, which constitutes the subject matter of that agency, but retained the equitable ownership of an undivided one-half interest in the property, and has a greater amount of money invested therein than has Michael.

From the evidence adduced upon the trial, the court found, in substance, that on and prior to February 5, 1920, the plaintiff was the owner of real property situate in Bend, Deschutes County, Oregon, described as Lot 7, Block 10, and commonly known as the Sphier block; that the value of the property at all times mentioned herein was $35,000; that on November 5, 1920, plaintiff, being indebted to divers persons, and particularly to the Western Loan & Building Company, set about to obtain the sum of about $20,000. The plaintiff negotiated a loan of $10,000 from the Title & Trust Company of Portland, Oregon, and arranged with defendant John Michael for an additional $10,000. In procuring the loans, it was agreed, owing to possible domestic difficulties between Sphier and his wife, that he should convey, and he did convey, the legal title to the Sphier block to the defendant John Michael, who agreed that he would invest, and who did invest, the sum of $5,000 in the property. In addition, Michael also procured from his brother, Peter Michael, a further loan of $5,000 on the property, secured by a second mortgage thereon.

It was agreed between defendant John Michael and plaintiff Sphier that as soon as the mortgages were paid out of the income from the property,

Michael was to reconvey to Sphier an undivided one-half interest in Lot 7, and that in the meantime Sphier was to have the management thereof, collect rents, pay the expenses of operation from the rents, and remit the net income monthly to John Michael, who agreed to pay the moneys to the holders of the mortgages in satisfaction of the accruing interest and the principal sums, when due. By reason of Sphier's domestic infelicity, this agreement was reduced to writing in two separate instruments, a written contract embracing all the terms thereof except as to the appointment of D. H. Sphier as agent in the management of the property being embodied in one instrument, and that portion of the agreement evidencing the appointment of Sphier as agent, in another and distinct instrument. These contracts were offered and received in evidence.

It appears that on February 5, 1920, at Portland, Oregon, the plaintiff delivered the deed executed by himself and wife to John Michael, one of the defendants herein, who then and there delivered to plaintiff Sphier the contract hereinbefore referred to, which provided that the commission for handling the property should be deducted from the gross earnings thereof; and, at that time, and as a part of the same transaction, and contemporaneously therewith, and for a valuable consideration, D. H. Sphier, plaintiff, was appointed by Michael as agent and placed in charge of the property, said appointment reading as follows:

"Mr. D. H. Sphier,
    "Portland, Oregon.
"Dear Sir:
    "You are hereby authorized, as my agent, to collect the rents on the Sphier block, Bend, Oregon,

and to rent said property from time to time, for which service to be rendered by you I agree to pay you ten per cent of the gross receipts.

"You are also instructed to remit to me the balance of the rents collected by you on the 10th of each month, after you have paid the current running expenses of said building and deducted your commission of ten per cent.

"Very sincerely yours,

"JOHN MICHAEL."

It also appears that as a part of the same transaction John Michael executed and delivered to the Title & Trust Company a note for $10,000, secured by a mortgage on the Sphier block, and to Peter Michael a note for $5,000, secured by a mortgage on the same property; further, that he supplied the further sum of $5,000, all of which sums of money were used for the purpose of discharging the debts and liens outstanding against the Sphier block.

After John Michael obtained title to the property, he became dissatisfied with Sphier and undertook to appoint and place in charge of the building for the collection of rents, the defendant J. F. Arnold, to whom he paid five per cent of the gross receipts instead of ten per cent which he had agreed to pay to plaintiff Sphier. The court found that the employment of Arnold as agent, for the purpose of collecting the rent and managing the Sphier block, was without authority and in violation of John Michael's contract of agency with D. H. Sphier, but that the interest of all the parties in the Sphier block had been conserved by Arnold's management, "Which should be commended, and not criticised," and that the five per cent paid to Arnold should be charged as an operating expense in the management of the property.

The evidence fails to disclose any valid reason for the revocation of Sphier's agency contract. Further, Sphier never, at any time, consented to the appointment of Arnold as agent for the property, neither did he ever consent that his contract should be revoked.

Based upon their evidence, defendants invoke the doctrine that the contract of agency existing between the parties was terminable at will.

1. As a general rule, a principal is entitled to revoke the authority of his agent at any time, whenever there is no agreement, express or implied, between them as to its duration.

In *Llanelly etc. Ry. Co.* v. *London etc. Ry. Co.*, 8 L. R. Ch. 942 (7 L. R. H. L. 550), Lord Justice James, in delivering the opinion of the court, said:

"I start with this proposition, that *prima facie* every contract is permanent and irrevocable, and that it lies upon a person who says that it is revocable or determinable to show either some expression in the contract itself, or something in the nature of the contract, from which it is reasonable to be implied that it was not intended to be permanent and perpetual, but was to be in some way or other subject to determination. No doubt there are a great many contracts of that kind; a contract of partnership, a contract of employer and employed in various modes —all of these are instances of contracts in which, from the nature of the case, we are obliged to consider that they were intended to be determinable. All the contracts, however, in which this has been held are, as far as I know, contracts which involve more or less of trust and confidence, more or less of delegation of authority, more or less of the necessity of being mutually satisfied with each other's conduct, more or less of personal relations between the parties."

2. We have seen that the agency contract was entered into for a valuable consideration, and that the agent owns an interest in the property constituting the subject matter of the agency. Under the facts, the following is a correct statement of the law.

"Where an authority or power is given for a valuable consideration, it may not lawfully be revoked by act of the principal alone, in the absence of a stipulation that it shall be revocable, and this is true, although the authority is not expressed to be irrevocable." 2 C. J. 535.

3. As coming within the exception of the general rule relating to the determination of an agency contract, the following is in point:

"The most important exception to the general rule above stated that an agency is revocable at the pleasure of the principal, exists in the case of a power of attorney, coupled with an interest in the subject matter thereof. In the absence of a stipulation that the power may be revoked, it is, from its nature, irrevocable by act of the principal without the agent's consent, whether so expressed or not. To bring a case within the exception it is necessary: (1) That the power and the interest should be coupled or united in point of time; that they should coexist. Hence, the interest must exist in the subject matter of the power, and not merely in that which is produced by an exercise of the power. * * (2) That the power and the interest should be coupled with reference to their subject matter. They must exist with reference to the same thing. For this reason also it is necessary that the agent's interest should exist in the subject matter of the power, and not merely in that which is produced by an exercise of the power. (3) That the power and the interest should be coupled with reference to the person in whom they are vested. They must be united in the

112 Or.—20

same person. And (4) that the power and the interest should be coupled with reference to their source. They must be derived by the agent from the same person." 31 Cyc. 1297, 1300.

See, also, *Hunt* v. *Rousmainer,* 8 Wheat. (U. S.) 174 (5 L. Ed. 589, see, also, Rose's U. S. Notes); *Frederick's Appeal,* 52 Pa. 338, 342 (91 Am. Dec. 162); *Louque* v. *Dejan,* 129 La. 519 (38 L. R. A. (N. S.) 389, 56 South. 427); *Todd* v. *Superior Court,* 181 Cal. 406 (184 Pac. 684, 7 A. L. R. 938).

4. However, the plaintiff has mistaken his remedy. An action for damages is the remedy for the breaching of the foregoing contract.

"In a leading case before the United States Court of Appeals, it was said by Mr. Justice HARLAN: 'The rule, we think, is without exception that equity will not compel the actual, affirmative performance by an employee of merely personal services, any more than it will compel an employer to retain in his personal service one who, no matter for what cause, is not acceptable to him for service of that character. * * If the quitting in the one case, or the discharging in the other, is in violation of the contract between the parties, the one injured by the breach has his action for damages; and a court of equity will not, indirectly or negatively, by means of an injunction restraining the violation of the contract, compel the affirmative performance from day to day or the affirmative acceptance of merely personal services. Relief of that sort has always been regarded as impracticable.' " 1 Mechem on Agency (2 ed.), § 642.

The record in this case shows that defendant John Michael is amply able to respond in any judgment of damages that plaintiff may recover on account of the breach of the agency contract.

It is said in 3 Williston on Contracts, at Section 1317:

"The plaintiff is entitled to damages which will compensate him for all the consequences which naturally follow the breach, and therefore the damages for the loss of the entire contract. This is no different principle from allowing a plaintiff in an action of tort for personal injuries to recover the damages he will probably suffer in the future. If the cause of action has accrued, the fact that the damages or all of them have not yet been suffered is no bar in any form of action to the recovery of damages estimated on the basis of full compensation."

As bearing upon plaintiff's right to recover on account of the breach of his agency contract, the following authorities are in point: *Schell* v. *Plumb*, 55 N. Y. 592; *Schiffan* v. *Peerless Motor Car Co.*, 13 Cal. App. 600 (110 Pac. 460); *United States Fidelity & Guaranty Co.* v. *Ridge* (Mo. App.), 179 S. W. 791; *Bredemier* v. *Pacific Supply Co.*, 64 Or. 576 (131 Pac. 312); *Pierce* v. *Tennessee Coal Co.*, 173 U. S. 1 (43 L. Ed. 591, 19 Sup. Ct. Rep. 335, see, also, Rose's U. S. Notes); *Wakeman* v. *Mfg. Co.*, 101 N. Y. 205 (4 N. E. 264, 54 Am. Rep. 676); *Wallace* v. *American Life Ins. Co.* (Or.), 225 Pac. 192.

This case is reversed and remanded for further proceedings not inconsistent with this opinion, neither party to recover costs in this court.

REVERSED AND REMANDED.

McBRIDE, C. J., and BEAN and McCOURT, JJ., concur.

Former opinion modified on rehearing October 14, 1924.

ON REHEARING.

(229 Pac. 1100.)

This was a suit for an accounting and for injunctive relief. The issues were joined, testimony taken, and the court, after making findings of fact and conclusions of law, decreed:

"It is now therefore considered, ordered, decreed and adjudged that the appointment of D. H. Sphier, under date of February 4, 1920, as agent to collect rents on the Sphier Block and more particularly described as Lot No. 7 of Block No. 10 of Bend, in Deschutes County, Oregon, and to rent said property and to pay the operating expenses of said building signed by John Michael, is in full force and effect and the said D. H. Sphier is entitled to and authorized from and after the first day of September, 1922, to act as such agent of and for said real property, and that the plaintiff, D. H. Sphier, is hereby awarded, allowed, and given judgment against said John Michael for the sum of Four Hundred Ninety Nine and 66/100 Dollars, the same being ten per cent. of the gross receipts from said building between February 5, 1920, and December 31, 1921, less five per cent. thereof paid by said John Michael to J. F. Arnold, which said sum the said John Michael shall pay out of the funds in his hands from the rentals received from said property; and that the said John Michael shall forthwith and not later than the first day of September, 1922, furnish to the plaintiff, D. H. Sphier, a complete and accurate account of all moneys collected and all disbursements made therefrom, from the first day of January, 1922, up to the first day of September, 1922, and that he shall pay out of the gross amount of money received from said building to the said D. H. Sphier ten per cent. thereof from said January 1, 1922, up to and

including the first day of September, 1922, less the five per cent. that has been paid to said J. F. Arnold as acting agent of said building; that the defendant, John Michael, and the defendant, J. F. Arnold, and each of them, their agents, servants and employees, and any other person or persons be and they are hereby commanded to restrain and to refrain from collecting any rent, or managing or operating said building and property herein described from and after the first day of September, 1922, and that from and after said date the said D. H. Sphier is hereby given the right and privilege to collect rents from said property, rent said property, pay the operating and current expenses thereof, and to deduct ten per cent. of the gross receipts from said building as compensation therefor and to remit to the said John Michael the balance of rents so collected on the 10th day of each month.''

From this decree the defendants appealed to this court. In an opinion reported in 227 Pac. 1062, decided July 22, 1924, we found the facts to be averred by plaintiff, but held that he had mistaken his remedy, and ordered the case reversed. Plaintiff petitions for a rehearing.          FORMER OPINION MODIFIED.

For appellants there was a brief over the names of *Mr. R. S. Hamilton* and *Messrs. Revelle & Revelle.*

For respondent there was a brief over the name of *Mr. Jay H. Upton.*

BROWN, J.—The plaintiff owned a lot and building in the City of Bend, of the approximate value of $35,000. He became involved in litigation with his contractors, supply houses and other creditors, and was unable to meet his obligations. In order to secure the necessary amount to meet his indebtedness, he attempted, but failed, to negotiate a loan

upon his property. He then journeyed to Seattle and interested his wealthy countryman, the defendant herein, in the Bend property. For the nominal consideration of $1, the plaintiff and his wife executed a deed of the Bend property to the defendant Michael, who borrowed $15,000 which he secured by a mortgage on that property, and, by advancing $5,000 from his personal funds, satisfied Sphier's obligations.

It was agreed that the plaintiff was to act as the manager of the building and collect the rents, and that he was to receive as compensation therefor ten per cent of the rental. It was further agreed:

"That out of the net income there shall be paid: First, the taxes and assessments; second, interest upon the two mortgages."

The agreement contained a provision for the satisfaction of the principal of the mortgages, and further provided that as soon as the mortgages were paid out of the income from the property the defendant was to reconvey to Sphier an undivided one-half interest therein.

5. For a further statement of the facts, see *Sphier v. Michael, supra.*

In our former opinion, after a review of the evidence we found that the agency contract that Michael would repudiate was entered into for a valuable consideration, and that the plaintiff was the equitable owner of an undivided one-half interest in the Bend property and had a greater amount of money invested therein than had Michael. We there held, however, that—

"An action for damages is the remedy for the breaching of the foregoing contract."

The plaintiff has supported his petition for rehearing by a well-prepared brief. We have again carefully reviewed the evidence and the pleadings, and investigated and considered the law; and, from such consideration, we believe that a court of equity has jurisdiction of the subject matter in controversy. The plaintiff came into equity. The defendant appeared and answered and has never questioned the jurisdiction of the court to hear the cause as a suit in equity.

The facts averred in plaintiff's petition conferred jurisdiction upon a court of equity to hear and determine this cause upon its merits.

This court, speaking through Mr. Justice McBRIDE, in the case of *Phez Co.* v. *Salem Fruit Union,* 103 Or. 514 (201 Pac. 222, 205 Pac. 970, 25 A. L. R. 1090), said:

"The fact that the remedy (injunction) was not applied and that defendants by selling their products to other parties have now put it out of their power to comply, ought not to oust equity of the jurisdiction it had when this suit was instituted, but the court should retain the case, and if the allegations of the complaint and the supplemental complaint are found to be true, it should compel the defaulting parties to make good in damages the losses directly sustained by plaintiff by reason of their default."

In *Gantenbein* v. *Bowles,* 103 Or. 277 (203 Pac. 614), Mr. Justice BEAN, in writing for the court, said:

"The facts disclosed in the suit render it appropriate for equitable cognizance. Moreover, the defendants, by their answer, have submitted the facts in the case to the equity jurisdiction of the court."

In *Ward* v. *Mid-West & Gulf Co.,* 97 Okl. 252 (223 Pac. 170), the Supreme Court of Oklahoma said:

"The contention of the plaintiff in error that a court of equity will settle the entire controversy before it, even to the extent of adjudicating matters of purely legal cognizance, is of course well settled."

In *Brown* v. *Winne et al.*, 92 Okl. 289 (219 Pac. 114), the court wrote:

"It is further hornbook law that a court of equity, having once obtained jurisdiction of a controversy, will retain such jurisdiction for the purpose of administering complete relief.

Treating of the terminable character of agency contracts, in 2 Ency. L. & P. 1247, the editors say:

"If no term of service has been agreed upon, the principal may, at any time, revoke the authority of his agent so far as it relates to things to be done and remaining unexecuted, unless the authority is coupled with an interest, or is conferred for a valuable consideration to the principal, or is part of a security."

The highest court of a sister state has written:

"The existence or nonexistence of an interest in the thing itself on which the power is to operate is the universally accepted test." *Brown* v. *Skotland et al.*, 12 N. D. 445 (97 N. W. 543).

Again: "A power, coupled with an interest, must create an interest in the thing itself upon which the power is to operate. The power and estate must be united, or be coexistent, and this class of powers survive the principal, and may be executed in the name of the attorney." *Bonney* v. *Smith*, 17 Ill. 531.

For a valuable discussion of the subject of the power of a principal to revoke a private agency, see 1 Mechem on Agency, Sections 561–586.

Pertaining to an irrevocable agency, it is said by the Supreme Court of Alabama in *Chambers* v. *Seay*, 73 Ala. 372 (5 A. R. C. 1366):

"To be irrevocable, it seems now well settled that the power conferred must create an interest in the thing itself, or in the property which is the subject of the power. In other words, 'the power and estate must be united and coexistent,' and, possibly, of such a nature that the power would survive the principal in the event of the latter's death, so as to be capable of execution in the name of the agent: *Blackstone* v. *Buttermore,* 53 Pa. St. 266 (5 A. R. C. 1409); *Bonney* v. *Smith,* 17 Ill. 531; *Mansfield* v. *Mansfield,* 6 Conn. 559 (6 Am. Dec. 76); *Hunt* v. *Rousmanier,* 8 Wheat. (21 U. S.) 174 (5 L. Ed. 590, 5 A. R. C. 1401, see, also, Rose's U. S. Notes); Evans on Agency (Ewell), marg. p. 83, note, and p. 85; *Raleigh* v. *Atkinson,* 6 Mees. & W. 670 (151 Eng. Repr. 581.)"

6. In order to constitute a power coupled with an interest, there must be an interest in the subject matter of the agency itself, and not a mere interest in the result of the execution of the agent's authority: *Hunt* v. *Rousmanier,* 8 Wheat. (U. S.) 174 (5 L. Ed. 590); *Taylor* v. *Burns,* 203 U. S. 120 (51 L. Ed. 116, 20 Sup. Ct. Rep. 40).

It has frequently been held that a mere interest arising from commissions or out of the proceeds of a transaction is not an interest which will prevent revocation. To constitute an agency coupled with an interest, both agency and interest must be derived from the same source: *Black* v. *Harsha,* 7 Kan. App. 794 (54 Pac. 21).

The lower court made a finding of fact, which is amply supported by the evidence, to the effect that contemporaneously with the execution of the agreement referred to, and for a valuable consideration, John Michael, defendant herein, appointed Sphier his agent in the management of the "Sphier block" and placed him in charge thereof; and that, as the

owner of an interest in the subject matter of the agency, such agency was coupled with an interest. It follows that our former opinion, in so far as it conflicts with this, is set aside and withdrawn, and the decision of the lower court is affirmed.

FORMER OPINION MODIFIED.

McBRIDE, C. J., and BEAN, J., concur.