In the Matter of the Estate of ANGELINA NUNNO, Deceased.

Surrogate's Court, Richmond County, January 23, 1937.

*Edward M. Seguine*, for Anthony Nunno and Mary Gianatasio, as executors, etc.

*Daniel Flynn*, for Michael Nunno, III, beneficiary.

*Carl D. Isaacs*, for Miron M. Walley, claimant.

SMITH, S.   One Angelina Nunno died on July 11, 1928.   By her will she created a trust of one-sixth of her estate for the benefit of her grandson, Michael Nunno, III, for life.   The assets of the estate were all of real property, located in the county of Richmond, in the State of New York, and were subject to mortgages.

The fiduciaries managed the properties, paid the interest on mortgages, taxes and expenses and paid over the small net income from time to time to the distributees, including said Michael Nunno, III.

On February 24, 1931, said Michael, III, retained one Miron M. Walley, an attorney of our sister State of New Jersey, to represent him in the matter of his grandmother's estate.   No proceeding was pending in said estate at that time, nor was any begun thereafter until October 29, 1936.   At the time of the retainer Walley had been admitted to practice in his native State less than one year, and he was not then, and has not since been, admitted to practice in the courts of the State of New York.

On May 21, 1931, said Walley prepared and had Michael, III, sign an agreement, which after a recital of the facts in relation of the existence of the estate, stated that said Michael, III, had had difficulty in procuring his share of the income therefrom and that he " retains Miron M. Walley, a practicing attorney of the State of New Jersey, party of the second part, to collect said sum and make settlements of such nature, as in his judgment may be deemed proper," and agreed to pay said Walley twenty-five per cent of all sums collected, and " 25% of the net proceeds which may be due Michael Nunno, as legatee of the estate of Angelina Nunno, deceased."

On November 19, 1931, said Walley had said Michael, III, sign an authorization directing " the executors of the estate of Angelina Nunno to pay over and make all checks payable to Miron M. Walley, attorney for Michael Nunno, and to send same to his office," and which further provided, " This authorization to remain in effect until the entire estate is closed."

Thereafter Walley received from the fiduciaries the income due the *cestui que trust*, until April 11, 1936, amounting to the sum of $2,155, of which Walley retained the sum of $538.75.

During all of said period (February 24, 1931, to April 11, 1936) it appears that Walley performed no legal services for said Michael Nunno, III, in relation to said estate, in the State of New York, and none were required to be performed elsewhere.

On May 4, 1936, said Michael, III, discharged said Walley and on May 14, 1936, said Walley wrote to Michael, III, refusing to accept his discharge and also sent Michael, III, a bill for $2,500 for services.

The fiduciaries in their proceeding for the settlement of their account made both Michael, III, and Walley parties, and requested the court to decree to whom the income of the estate directed to be paid to Michael Nunno, III, should be paid. Thereupon, after service of citation upon him within the State of New York, said Walley appeared in said proceeding by an attorney, claimed that compensation was still due to him, and asked that the amount of such compensation due and to grow due to him under the agreement of retainer be fixed and determined pursuant to section 231-a of the Surrogate's Court Act, and that the executors be directed to pay to him that amount from the share of said Michael, III. Thereupon the attorney for Michael, III, made application for a refund of the moneys retained by Walley from the income of the trust fund paid to him by the executors of the will of the testatrix.

Upon the hearing it appeared that the only payments of income to said *cestui que trust* after he retained said Walley had been made through Walley, and it appeared from the will that said *cestui que trust* is not entitled to any part of the estate of the testatrix except the income from one-sixth part thereof.

It does not seem reasonable to believe that section 231-a of the Surrogate's Court Act affords relief to an attorney not admitted to practice in the courts of this State where the services performed would necessarily be required to be performed within this State, and although it was held in *Matter of Matheson* (265 N. Y. 81) that the mere non-admission of the attorney whose compensation was sought to be fixed therein did not affect the jurisdiction of the surrogate if jurisdiction of his person could be had, yet as that holding was in relation to services performed in a Federal matter, I venture the humble opinion that the statement therein, that, "any attorney, whether admitted in this State or elsewhere, is subject to the correlative right of the executor to hale him into the same tribunal for a like purpose," was not intended to apply to an attorney who had no authority to perform legal services in this State, unless the services involved were required to be performed for the estate or person interested, in the jurisdiction where the attorney was admitted to practice or in a Federal jurisdiction.

The claim of Walley to have the amount of his compensation fixed under section 231-a of the Surrogate's Court Act is denied, and as it appears that he performed no legal service for said Michael, III, within the State of New York, and no legal service was necessarily to be performed without the State his claim for compensation for legal services is dismissed.

Although the services performed by Walley cannot be considered as an attorney's services, yet such services as were performed can be considered as the services of an agent under a power for which he received compensation up to the time of his dismissal. For his employment terminated upon receipt by him of the *cestui que trust's* letter of May 4, 1936, and he had received all of the compensation to which he was entitled under the agreement at that time.

In *Matter of Oakley* (116 Misc. 494; affd., 207 App. Div. 811) it was held that a written order signed by the *cestui que trust* of a testamentary trust and delivered to the trustee directing him to pay all accumulated and future income to a certain person, *is a mere direction, revocable at the will of the cestui que trust* (italics mine) who thereby loses none of his rights under the will, and is not an assignment of future income, within the meaning of this section, the section referred to being section 15 of the Personal Property Law, which prohibits assignments of interests in the income of express trusts. (See, also, *Matter of Goldman*, 142 Misc. 790, to the same effect.)

To uphold any contention that the power to collect was coupled with an interest in the agent would necessarily render the authority void under section 15 of the Personal Property Law as an assignment of future income from an express trust.

The authority conferred upon surrogates by section 32-a of the Personal Property Law, to fix the compensation of persons acting under powers of attorney and similar instruments containing authorization or delegation of power to act thereunder is predicated upon jurisdiction obtained by the recording of such instruments in the office of the surrogate. The instrument in question was executed on May 21, 1931, was not acknowledged or recorded, and as said section was not effective until March 25, 1935, I am of the opinion that it is not retroactive as it would impair the obligation of a valid contract, no matter how unjust the contract appears to be to one who knows the value of the services performed. Any action for recovery of the moneys claimed to have been overpaid for the services rendered or not rendered must be brought in a court of original jurisdiction, where all questions in relation to the agreement of retainer can be litigated.

The answer to the question of the fiduciaries as to whom they shall pay the income from the trust, is, therefore, that all such income must be paid to Michael Nunno, III, the *cestui que trust*.

Costs against Miron M. Walley are awarded to Michael Nunno, III.

Enter decree accordingly.