Argued April 26, affirmed June 1, 1976

CITY OF PORTLAND, *Appellant,*
*v.*
SETTERGREN et al, *Respondents.*
(No. 402-247, CA 4937)

549 P2d 1290

*Donald C. Jeffery,* Senior Deputy City Attorney, Portland, argued the cause for appellant. With him on the briefs was John W. Osburn, City Attorney, Portland.

*J. William Bennett,* Portland, argued the cause and filed the brief for respondent Settergren.

*Ridgway K. Foley, Jr.,* Portland, argued the cause for respondents Tegart. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe and Rockne Gill, Portland.

Before Foley, Presiding Judge, and Fort and Howell, Judges.

FOLEY, P.J.

## FOLEY, P. J.

In the process of constructing a large, concrete reservoir for the City of Portland in 1973, defendant Settergren, the contractor, placed approximately 5,000 yards of earth material on hillside property belonging to defendants Tegart, located on Fairmount Boulevard. The contractor had permits for the removal of the material from the reservoir site but did not obtain the required permits for placing the fill material on the Tegarts' land. Pursuant to initial proceedings by the city against him only, defendant Settergren removed and hauled away a portion of the fill material.

In September 1974 plaintiff city commenced this suit seeking to require defendants to remove all of the remaining dirt fill and to restore the real property to its original condition.

The trial court found that the landfill was placed without permits, that the defendants were responsible, and that more than 1,000 yards of material remained on the site. After considering the arguments advanced by the parties and having viewed the site of the landfill, the court provided in its decree:

"1. Defendants, under supervision of the Court, shall plant vegetation at the site in order to beautify same. A plan for the planting shall be submitted for Court approval, with cost estimates, prior to the work commencing. The maximum cost to defendants shall be $2,000.

"2. In the alternative to paragraph 1, the defendants, by notice to the Court within ten days of entry of this order, may elect to remove from the site 1,000 yards of earth.

"3. The cost to the defendants of alternates 1 or 2 above shall be borne by them as follows: three-quarters by defendant Gene Settergren and one-quarter by defendants William E. Tegart and Harriet B. Tegart."

Plaintiff contends on appeal that instead of deciding the case upon equitable principles, the court

should have allowed the mandatory injunction requested by the city for the removal of all of the fill material placed without permits. Indeed, the city contends that the court is required by law to issue the mandatory injunction.

The violation of an ordinance does not ipso facto require as relief the issuance of a mandatory injunction. For example, in *Frankland v. City of Lake Oswego,* 267 Or 452, 517 P2d 1042 (1974), our Supreme Court, balancing equities in a case raising a similar problem, quoted with approval the following principles:

" "* * * [P]roper resort to equity jurisdiction does not of necessity invoke the application of extraordinary and severe relief by way of a mandatory injunction. It is the duty of the court of chancery to consider and weigh the relative convenience or inconvenience, the relative injury sought to be cured as compared with the hardship of injunctive relief. 28 Am. Jur., Injunctions Sec. 54, p. 250. Such consideration may dictate an award of damages in lieu of injunction, and the doctrine has application to violations of building restrictions. *Jackson v. Stevenson,* 156 Mass. 496, 31 N.E. 691, 693; *Amerman v. Deane,* 132 N.Y. 355, 30 N.E. 741, 742. * * *' 129 A2d at 651-52." 267 Or at 479.

*See also Tauscher v. Andruss,* 240 Or 304, 401 P2d 40 (1965).

The city urges that this court's recent decision in *State ex rel Lucas v. Goss,* 23 Or App 501, 543 P2d 9 (1975), Sup Ct *review denied* (1976), compels the issuance of a mandatory injunction in this case. We disagree. In *Lucas* we balanced the equities and concluded that there the trial court should have issued a mandatory injunction. An important factor to be weighed was that the trial court's refusal to issue an injunction allowed a party to avoid the procurement of a health certificate otherwise required for the operation of a mobile home park. However, we did not intend to hold that an injunction must be issued in

every instance where challenged conduct to some degree is violative of a legislative enactment.

Also relevant are recent cases adhering to the basic principle that the issuance of an injunction lies within the sound discretion of the court. *State ex rel Johnson v. Int. Harv.,* 25 Or App 9, 548 P2d 176 (1976); *State Land Board v. Heuker,* 25 Or App 137, 548 P2d 1323 (1976); *see also Frankland v. City of Lake Oswego, supra; Wilson v. Parent,* 228 Or 354, 365 P2d 72 (1961). In view of the historical power of a court of equity to do equity by moulding a decree to the necessities of the particular case, we held in *State ex rel Johnson v. Int. Harv., supra,* that in the absence of an unequivocal legislative mandate, the Unfair and Unlawful Trade Practices Act, ORS ch 646, does not require the issuance of an injunction in every case where an unlawful trade practice has been committed. *See also Rondeau v. Mosinee Paper Corp.,* 422 US 49, 95 S Ct 2069, 2077, 45 L Ed 2d 12 (1975); *Hecht Co. v. Bowles,* 321 US 321, 64 S Ct 587, 88 L Ed 754 (1944).

■ Upon our de novo review of the record we conclude that the court correctly balanced the equities and denied the application for a mandatory injunction. *Frankland v. City of Lake Oswego, supra; State Land Board v. Heuker, supra.*

Affirmed.